**Manuel A. LOPES**

**v.**

**Desiree K. PHILLIPS et al.**

**No. 93–656–Appeal.**

Supreme Court of Rhode Island.

July 12, 1996.

Edward J. Mulligan, Carolyn E. Mulligan, Lincoln, for Plaintiff.

Michael E. Civittolo, Providence, for Defendant.

## OPINION

BOURCIER, Justice.

This is an appeal from a final judgment of the Superior Court following grant of summary judgment in favor of one of the two named defendants in a civil negligence case.

The appellant here, and plaintiff below, is Manuel A. Lopes (Lopes). On March 6, 1990, Lopes, a Massachusetts resident, was the operator of a motor vehicle that was parked on Pomona Avenue in Providence and was struck by another vehicle while so parked. The operator of the other vehicle was Desiree K. Phillips (Phillips), who had rented the vehicle she was operating from Agency Rent–A–Car (Agency), a Delaware corporation doing business in Seekonk, Massachusetts. The record before us reveals that Phillips, a Rhode Island resident, had both signed the vehicle rental contract and had taken possession of the rental car at Agency's Seekonk, Massachusetts, office. The collision involving the two vehicles, unlike the litigation that followed, was somewhat prosaic.

Shortly before midnight, Phillips, while driving the rental car near the intersection of Academy and Pomona Avenues in Providence, attempted to make a right turn from Academy onto Pomona. The car slid on the icy roadway and struck the left side of the parked car occupied by Lopes. Lopes was the only person in the car, which was owned by his former wife, also of Massachusetts. Lopes was injured, taken to the emergency room at Rhode Island Hospital for treatment and was later released. He later complained of back pain and during the ensuing months received medical care and underwent some rehabilitative medical treatment.

As a result of his alleged personal injuries, Lopes in September 1991 instituted a civil negligence action in the Superior Court, naming Phillips and Agency as defendants. Phillips did not answer the complaint and was defaulted in October 1992. Agency, the remaining defendant in the case, following discovery, filed a motion for summary judgment in September 1993. That motion was heard and granted. The hearing justice ruled that Agency was not jointly and severally liable for the alleged negligence of the co-defendant Phillips. Final judgment in favor of Agency entered on December 1, 1993. The plaintiff's appeal was thereafter duly filed.

## I

### Summary Judgment

Summary judgment foreclosing and determining a party's interest and/or liability in pending litigation short of trial is understandably an abrupt manner of disposing of a pending legal action, utilization of which we have referred to as being drastic, *McPhillips v. Zayre Corp.*, 582 A.2d 747 (R.I.1990), and because so, should be applied cautiously by the hearing justice. *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.*, 640 A.2d 950 (R.I. 1994); *Golderese v. Suburban Land Co.*, 590 A.2d 395 (R.I.1991); *Rustigian v. Celona*, 478 A.2d 187 (R.I.1984).

This Court reviews the propriety of an order granting summary judgment employing the same standard as that utilized by the hearing justice when initially passing upon the motion. *Hydro–Manufacturing, Inc.*, 640 A.2d at 954. That standard, pursuant to Rule 56 of the Superior Court Rules of Civil Procedure, requires us to review and evaluate the case pleadings, affidavits, admissions, answers to interrogatories, and other case file materials in the light most favorable to the nonmoving party and to determine therefrom whether there is any genuine issue of disputed material fact, and, if not, whether the moving party is entitled to judgment as a matter of law. *Hydro–Manufacturing, Inc.*, 640 A.2d at 954; *LaFazia v. Howe*, 575 A.2d 182, 184 (R.I.1990); *Grissom v. Pawtucket Trust Co.*, 559 A.2d 1065, 1066 (R.I.1989); *Ludwig v. Kowal*, 419 A.2d 297, 301 (R.I. 1980). If no material issue of contested fact is found, summary judgment is appropriate. *Richard v. Blue Cross & Blue Shield*, 604 A.2d 1260, 1261 (R.I.1992). If a material issue of contested fact is discernible from the case pleadings and other case filings, that contested issue cannot be disposed of by

summary judgment but must be left for the factfinder to resolve, and the motion should be denied. *Saltzman v. Atlantic Realty Co.,* 434 A.2d 1343 (R.I.1981); *Palazzo v. Big G Supermarkets, Inc.,* 110 R.I. 242, 292 A.2d 235 (1972).

II

Agency's Position on Summary Judgment

Agency in its summary judgment motion asserted that pursuant to our opinion in *Fratus v. Amerco,* 575 A.2d 989 (R.I.1990), it could not be held liable to plaintiff Lopes for any negligent action on the part of Phillips. In *Fratus,* we had answered in the negative, the following question certified to this Court by the United States District Court for the District of Rhode Island pursuant to Rule 6 of our Supreme Court Rules of Appellate Procedure:

> "Whether Rhode Island law imposes joint and several liability on any owner of a rental vehicle not registered or rented in, but negligently operated by the bailee thereof, on the public highways of the State of Rhode Island." *Fratus,* 575 A.2d at 990.

In order to respond properly to that certified question, we were required in *Fratus* to interpret chapter 34 of title 31 of our General Laws, entitled "Responsibility of Owners of Rental Vehicles." That chapter mandates now, as it did then, that anyone intending to engage in the business of renting motor vehicles or trucks in this state without drivers must first notify the Registry of Motor Vehicles of that intention to rent and must also furnish proof of financial responsibility in certain prescribed amounts. G.L.1956 § 31-34-1. The statute further provides in pertinent part:

> "Any owner of a for hire motor vehicle or truck who has given proof of financial responsibility under this chapter or who in violation of this chapter has failed to give proof of financial responsibility, shall be jointly and severally liable with any person operating the vehicle for any damages caused by the negligence of any person operating the vehicle by or with the permission of the owner." Section 31-34-4.

In *Fratus* we concluded that § 31-34-4 was not to "be applied extraterritorily to a Massachusetts bailment." *Fratus,* 575 A.2d at 992. Our reasoning was based, in part, upon a review of relevant regulations promulgated by the Rhode Island Department of Transportation (DOT), and we emphasized that "this court attributes great weight to an agency's construction of a regulatory statute when the statute's provisions are unclear." *Id.* at 991 (quoting *Defenders of Animals, Inc. v. Department of Environmental Management,* 553 A.2d 541, 543 (R.I.1989)). One of the regulations promulgated by the DOT, regulation 2.0, provided in pertinent part that "every party engaged in leasing of vehicles *in this State* shall first obtain a license from the Division of Motor Vehicles." *Fratus,* 575 A.2d at 992. The DOT regulation 6.1 read in pertinent part that "the owner of any motor vehicle offered for lease *in this State* by a motor vehicle lessor shall provide proof of financial responsibility to the Division of Motor Vehicles * * * ." *Id.*

We concluded that reference to the applicable statutory and regulatory provisions "clearly establish[es] that the duty to file proof of financial responsibility is limited to owners of vehicles that are registered in Rhode Island or that are required to be registered in Rhode Island." *Fratus,* 575 A.2d at 992. We further noted that because the failure of an owner of a leased vehicle to file proof of financial responsibility constituted a misdemeanor pursuant to § 31-34-6, "every owner of a leased vehicle who failed to file proof of financial responsibility in Rhode Island, regardless of the location or registration of that vehicle, would be guilty of a criminal offense in Rhode Island." *Fratus,* 575 A.2d at 992. This, we reasoned in *Fratus,* could lead to absurd results or, as we specifically stated, an "absurd conclusion." *Id.*

Putting aside for the moment the fact that the rental companies in both this case and in *Fratus* were situated in Massachusetts, the potential absurdity of our reaching a contrary result is readily apparent. If we were to hold that out-of-state companies, renting cars not registered in Rhode Island, were liable for the negligent acts of the

individuals who had rented their vehicles in those foreign states, then it would have to follow, *a priori*, that a car rental company in Alaska would have to take the preventative measure of filing proof of financial responsibility with our State Registry of Motor Vehicles' department to protect itself in the eventuality that one day, one of its customers might drive from cold Nome, Alaska, to posh Newport, Rhode Island, and while here become involved in an accident. In that case, if the owner of the Alaskan rental company had not filed proof of financial responsibility in Rhode Island, then that owner would be vulnerable to criminal charges in our state. "As a general rule, criminal laws do not operate beyond the territorial limits of the state in which they are enacted." *Fratus,* 575 A.2d at 992 (citing *Hardy v. Betz,* 105 N.H. 169, 195 A.2d 582 (1963); *In re Adoption of Lunger,* 28 N.J.Super. 614, 101 A.2d 370 (1953)). We therefore reiterate our previously expressed belief in *Fratus* that "the Legislature never intended this statute to be applied outside this state." *Fratus,* 575 A.2d at 992.

■ The pertinent facts of the *Fratus* case and the case at bar are strikingly similar. In *Fratus,* the rental vehicle was rented in Worcester, Massachusetts. The rental company was located and incorporated in Massachusetts, and at the time of the accident title to the rental vehicle was held by a Michigan corporation, which is also the state in which the vehicle was registered. The allegedly negligent driver of the rental vehicle, a Massachusetts resident, struck the plaintiff, who at the time was employed by the State of Rhode Island in making road repairs to Interstate 295 in Cranston. *Fratus,* 575 A.2d at 990. In this case, the rental vehicle was rented in Seekonk, Massachusetts. The rental company was located in Massachusetts, incorporated in Delaware, and the rental vehicle was registered in Connecticut. The allegedly negligent driver was a Rhode Island resident, and the plaintiff was a Massachusetts resident. In both factual situations, neither rental company nor their vehicles had any relationship to Rhode Island except that each of their customers, of their own volition, had driven the vehicles into Rhode Island and onto this state's roadways. Under *Fratus,* the foreign rental companies cannot be called upon to do penance for the sins of their customers.

In denying Lopes's appeal, we are mindful of the public policies underlying our uninsured/underinsured motorist statute (G.L. 1956 § 27-7-2.1), as well as our Motor Vehicle Reparations Act (G.L.1956 chapter 47 of title 31). This Court has previously held that the former statute "was enacted to give the insured protection against the 'economic loss resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles.'" *General Accident Insurance Co. of America v. Cuddy,* 658 A.2d 13, 16 (R.I. 1995) (quoting *Aldcroft v. Fidelity and Casualty Co. of New York,* 106 R.I. 311, 318, 259 A.2d 408, 413 (1969)). However, notwithstanding that meritorious policy consideration, there is no evidence in the record that Lopes himself possessed any insurance. Therefore, the uninsured/underinsured motorist coverage statute could not be applicable in this case.

The latter statute, chapter 47 of title 31, "sets forth a scheme of mandatory-automobile insurance." *Miles-Un-Ltd., Inc. v. Fanning,* 624 A.2d 843, 846 (R.I.1993). In 1994, the DOT promulgated regulations in order "to provide effective administration and enforcement of the provisions of Chapter 47 of Title 31 regarding the compulsory nature of financial responsibility when owning or operating motor vehicles and holding driving privileges in this state." Rule 2.0, A. Subsection B of the rule lists penalties for violations of the statute's provisions in order "to protect the interests of the public when driving upon the roadways of the state of Rhode Island." These penalties include the suspension of one's driver's license, motor vehicle registration, and license plates, fines, and possible imprisonment for subsequent offenses. The penalties clearly are directed at drivers who possess Rhode Island licenses, registrations, and license plates since the DOT would have no authority to suspend out-of-state drivers' licenses, registrations, and plates.

However, the Motor Vehicle Reparations Act, pursuant to § 31-47-8(d)(1), provides that the registrar of motor vehicles:

"[U]pon receipt of evidence that the owner of a motor vehicle not registered in this state has operated or permitted a motor vehicle to be operated upon the public highways of this state while financial security was not in effect with respect to the vehicle, shall revoke the person's privilege to operate any motor vehicle in this state and the privilege of the operation within this state of any motor vehicle owned by him or her."

The word "person" is defined in § 31–47–2(13) as including "every natural person, firm, partnership, association, or corporation." Therefore, this language would appear to cover owners of vehicles that are not registered in this state, including owners of rental vehicles. Under this reading, the owner of a rental vehicle company who is not in compliance with the statute would not be able to allow any of his or her vehicles to be operated in Rhode Island for a period of three months from the date of privilege revocation. Section 31–47–8(d)(2).

There is, therefore, an apparent conflict between the statute governing the Responsibility of Owners of Rental Vehicles and the Motor Vehicle Reparations Act. The former, as we have interpreted it, does not require an out-of-state rental vehicle agency to give proof of financial responsibility for vehicles not registered in this state, whereas the latter statute does appear to require such a showing. In order to resolve this conflict, we must look to G.L.1956 § 43–3–26, which provides:

"Wherever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in those cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision."

The Motor Vehicle Reparations Act is the more general of the two statutes, appearing to require that persons be able to prove financial responsibility for their vehicles regardless of whether those vehicles are registered in Rhode Island or elsewhere. The Responsibility of the Owners of Rental Vehicles statute is obviously the more specific, exclusively requiring that owners of rental vehicles without drivers provide proof of financial responsibility. These two provisions cannot be construed so that effect may be given to both. The Responsibility of Owners of Rental Vehicles statute, accordingly, "shall prevail and shall be construed as an exception to the general provision." Section 43–3–26. *See also Casey v. Sundlun,* 615 A.2d 481 (R.I.1992); *Tessier v. Ann & Hope Factory Outlet, Inc.,* 114 R.I. 315, 332 A.2d 781 (1975); *Landers v. Reynolds,* 92 R.I. 403, 169 A.2d 367 (1961).

We conclude that the public policy considerations inherent in both statutes represent the justifiable belief of state lawmakers that the statutes are each beneficial to the residents of this state by requiring proof of financial responsibility, but that the statutes as enacted do not specifically abrogate the chapter governing the Responsibility of Owners of Rental Vehicles. Therefore, our interpretation in *Fratus* of that statute remains intact. "The Legislature is presumed to understand the nature of prior legislation and the effects of any judicial interpretation of that legislation." *Defenders of Animals, Inc.,* 553 A.2d at 543. *See also State v. Ricci,* 533 A.2d 844 (R.I.1987); *First Federal Savings & Loan Association of Providence v. Langton,* 105 R.I. 236, 251 A.2d 170 (1969), *cert. denied,* 396 U.S. 374, 90 S.Ct. 613, 24 L.Ed.2d 589 (1970). When the General Assembly enacted the Motor Vehicle Reparations Act in 1991, it had the benefit of our opinion in *Fratus.* It therefore could have chosen, if it had deemed it desirable, to amend the Responsibility of Owners of Rental Vehicles statute, or to specifically include owners of rental vehicles in the Motor Vehicle Reparations Act. It has done neither. We have stated that "it is not for this court to legislate by judicial interpretation what we think would be a more equitable result than that provided by the clear and unambiguous terms of the statute." *Universal Winding Co. v. Parks,* 88 R.I. 384, 391, 148 A.2d 755, 759 (1959); *See also DeAngelis v. Rhode Island Ethics Commission,* 656 A.2d 967, 970 (R.I.1995). Unless we are now willing to admit of error in our reasoning in *Fratus,* we

are bound to the opinion that, as a matter of law, Agency was not obliged to file proof of financial responsibility in Rhode Island and thus could not be held liable for the alleged negligent acts of the driver of one of its vehicles on this state's roadways. We reaffirm our holding in *Fratus.*

For these reasons, we deny and dismiss the plaintiff's appeal. The judgment appealed from is affirmed, and we remand the papers of this case to the Superior Court.

FLANDERS, J., did not participate.